FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 3:54 pm, May 16, 2011

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Dublin Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 Case |
| | ) | Number <u>10-30534</u> |
| GRAHAM BROTHERS CONSTRUCTION, | ) | |
| INC. | ) | |
| | ) | |
|     Debtor | ) | |
| _____ | ) | |

### ORDER

Before the Court is a Motion to Allow Late Claim filed by Len-Verandahs, LLP ("Len-Verandahs") seeking the allowance of its late filed claim in the bankruptcy of Graham Brothers Construction Inc. ("Debtor"). The Court has jurisdiction pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B). For the reasons set forth below, the motion is denied.

### FACTS

The underlying dispute between Len-Verandahs and Debtor arises out of a construction contract between Len-Verandahs and Specialized Services, Inc. ("SSI"), an affiliate company of Debtor, regarding the development of a residential subdivision known as The Verandahs in Pasco County, Florida. Apparently, SSI contracted to serve as the site preparation contractor for this development,

%AO 72A
(Rev. 8/82)

including clearing, grubbing and mass earthwork. Debtor allegedly performed some of this work in exchange for a portion of the contract value. Len-Verandahs alleges that in the course of performing their work, both Debtor and SSI acted negligently and as a result are liable to Len-Verandahs.

To this end, Len-Verandahs sued SSI in Pasco County, Florida in 2008 for breach of contract and obtained a judgment of roughly $2 million in June 2010. <u>Len-Verandahs, LLP v. Specialized Services, Inc. et al.</u>, Case No. 51-2008-CA-004269 (Fl. Cir. Ct. 2008). Subsequently, in July of 2010, Len-Verandahs filed suit against Debtor in Pasco County, Florida alleging negligence ("the Florida Action"). <u>Len-Verandahs, LLP v. Graham Bros. Constr. Co. Inc.</u>, Case No. 51-10-CA-5697-WS (Fl. Cir. Ct. July 19, 2010). Prior to Debtor's bankruptcy, National Trust Insurance Company ("National"), Debtor's commercial general liability insurance carrier, was defending Debtor in the Florida Action under a reservation of rights. Subsequently, National filed a declaratory action against Debtor and Len-Verandahs in the District Court for the Southern District of Georgia seeking a determination of its rights and obligations in connection with the Florida Action ("the Declaratory Action"). <u>Nat'l Trust Ins. Co. v. Graham Bros. Constr. Co. Inc., et al.</u>, Case No. CV 3:10-070DHB-WLB (S.D. Ga. Aug. 24,

2

2010).

Thereafter, on October 5, 2010, Debtor filed for chapter 11 bankruptcy relief. Notice was issued on October 6, 2010 requiring all non-governmental proof of claims to be filed on or before February 7, 2011 ("claims bar date"). There is no dispute that Len-Verandahs was served with the notice and understood its import. Debtor's summary of schedules was filed in November 2010 and indicated Debtor is solvent with total assets of approximately $19,790,620 and total liabilities of approximately $18,179,180. Debtor's Statement of Financial Affairs (with attachments) also filed in early November discloses that insiders owed Debtor approximately $7,825,350, and Debtor made various payments to these insiders within 90 days of the petition date.[1]

Len-Verandahs filed a motion for relief from stay on November 24, 2010 seeking relief to pursue Debtor nominally in the Florida Action in order to pursue the proceeds of the National insurance policy. Motion to Allow Late Claim, Dckt. No. 237, p. 1. After the hearing and post-hearing briefs, the motion was conditionally granted on April 18, 2011 allowing Len-Verandahs to pursue Debtor in the Florida Action nominally and only to the extent

---

[1] At the May 10, 2011 hearing, the Debtor and United States Trustee reported Debtor is amending the schedules to disclose all such transactions made within a year of the petition date.

3

of insurance proceeds.[2]

On March 9, 2011, the United States Trustee filed a motion for appointment of an examiner to review and report on Debtor's pre-petition transactions with insiders. With the consent of parties, the United States Trustee's motion was granted at the May 10, 2011 hearing. At the hearing, the United States Trustee noted that the request for the examiner was not due to a lack of disclosure by Debtor; rather, Debtor's disclosures in the Statement of Financial Affairs alerted the United States Trustee of the need for an examiner.

Len-Verandahs's motion to allow its late claim was considered at this same May 10, 2011 hearing. Len-Verandahs candidly acknowledged it made a strategic decision not to file a proof of claim against Debtor's bankruptcy estate as it was content to seek the insurance proceeds and to pursue SSI. Len-Verandahs also acknowledged that it did not think Debtor's bankruptcy estate would be able to pay its claim. Len-Verandahs is now concerned if Debtor's purported liability is found not to be covered by National's insurance policy, Len-Verandahs will be without a remedy. Len-Verandahs further acknowledges at the time of filing its motion

---

[2] With the consent of all parties, relief from the stay also was granted to National to pursue the Declaratory Action.

AO 72A
(Rev. 8/82)

for relief from stay, it decided not to file a proof of claim because it did not want to risk giving up its right to a jury trial or having the Florida Action heard in Florida. To date, Len-Verandahs has been unsuccessful in collecting its judgment against SSI, and states the recent motion filed by United States Trustee alerted Len-Verandahs that additional assets may be available for distribution to Debtor's creditors.

From a timing perspective, Debtor anticipates filing its plan and disclosure statement within the next 45 days.

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3) "[t]he court shall fix and for cause shown may extend the time within which proof of claim or interest may be filed" in chapter 11 cases. Fed. R. Bankr. P. 3003(c)(3). In a chapter 11 proceeding, if a claimant fails to timely file its proof of claim, it is not treated as a creditor for voting and distribution purposes in the bankruptcy case. Fed. R. Bankr. P. 3003(c)(2). The claims bar date was February 7, 2011 and Len-Verandahs filed its motion to allow a late claim on April 12, 2011. Since the motion was filed after the claims bar date, it may only be allowed if Len Verandahs's failure to timely file a claim constitutes "excusable neglect"

5

pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1).[3] See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 388 (1993); In re Robinson Foundry, Inc., 347 B.R. 781, 783 (Bankr. M.D. Ala. 2006)("Rule 3003(c)(2) must be read in conjunction with Rule 9006(b)(1) which empowers a bankruptcy court to permit a late filed claim if the failure to comply with the deadline was the result of 'excusable neglect.'").

Consideration of "excusable neglect" is a two-pronged analysis. Pioneer, 507 U.S. at 388; In re Montaldo Corp., 209 B.R. 40, 47-48 (Bankr. M.D.N.C. 1997); Agribank v. Green, 188 B.R. 982, 987 (C.D. Ill. 1995). The first prong is whether the proof of claim was not timely filed because of "neglect." See In re Montaldo Corp., 209 B.R. at 47-48. As the Supreme Court has stated:

> The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or

---

[3] Federal Rule of Bankruptcy Procedure 9006(b)(1) states:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

6

> closer to the point for our purposes, "to leave undone or unattended to esp[ecially] through carelessness." . . . The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.

Pioneer, 507 U.S. at 388 (internal citations omitted). If neglect is found, the second prong is whether the neglect is "excusable." The analysis of "excusable neglect" is an equitable one, taking into consideration all relevant circumstances, including:

> (i) the danger of prejudice to the debtor;
>
> (ii) the length of the delay and its potential impact on the judicial proceedings;
>
> (iii) the reason for the delay, including whether it was in the reasonable control of the movant; and
>
> (iv) whether the movant acted in good faith.

Id. at 395. Len-Verandahs has the burden of proof to establish "excusable neglect" by a preponderance of the evidence. In re Montaldo Corp., 209 B.R. at 47.

After Pioneer, the majority of courts have held that a conscious and deliberate decision not to file a proof of claim does not constitute "neglect" even where the decision ultimately is determined to be faulty. See Banco Latino Int'l v. Gomez-Lopez (In re Banco Latino Int'l), 310 B.R. 780, 785 (S.D. Fla. 2004)("it is well established that 'where a party's actions are deliberate, the

7

party's late filing cannot constitute 'excusable neglect.'"); In re Celotex Corp., 232 B.R. 493, 496 (M.D. Fla. 1999)("[a]ppellants' decisions not to pursue timely proofs of claim were deliberate and conscious and did not arise as a result of 'neglect,' there is no 'neglect' which can be the focus of an 'excusable neglect' analysis under Pioneer."); accord Agribank v. Green, 188 B.R. 982 (C.D. Ill. 1995); In re Montaldo Corp., 209 B.R. 40, 48 (Bankr. M.D.N.C. 1997); In re Bicoastal Corp., 176 B.R. 966 (Bankr. M.D. Fla. 1994); but see, In re Earth Rock, Inc., 153 B.R. 61, 63-64 (Bankr. Idaho 1993)(allowing late claim where the delay was the result of creditor's former attorney's decision not to file claim).

In the case sub judice, there has been no "neglect" for Rule 9006(b) purposes. Len-Verandahs made a conscious and strategic decision not to file a proof of claim. After considering the matter, it determined it did not want to jeopardize its right to a jury trial or Florida venue by filing a proof of claim. Len-Verandahs argued in its successful motion for relief from stay proceeding that there would be no harm to Debtor if the stay was lifted because Len-Verandahs was not looking directly to Debtor for payment, rather, it wanted to pursue Debtor nominally, to the extent of insurance proceeds. While this may not have changed the result in the motion for relief matter, it was a factor I considered in

8

reaching my conclusion. See generally World Bazaar Franchise Corp. v. Benbo of Ga., Inc. (In re Benbo of Ga., Inc.), 1992 WL 12004318, *3 (Bankr. S.D. Ga. March 2, 1992)(regarding the issue of great prejudice to the bankruptcy estate, "great prejudice results if debtor/bankrupt is held personally liable, for purposes of collection, for a civil damage award. . . . [D]ebtor/defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for recovery.")(internal citations omitted). Len-Verandahs consciously chose not to file a claim as it was content to pursue SSI and any insurance proceeds. This is not neglect as contemplated by Rule 9006(b).

Len-Verandahs argues it made a mistake in deciding not to file a claim because it relied upon Debtor's schedules when making its decision. It was not until the United States Trustee filed its motion to appoint an examiner that Len-Verandahs was alerted it to the potential solvency of the bankruptcy estate. However, Debtor's summary of schedules discloses that Debtor is solvent and its Statement of Financial Affairs reveals Debtor was owed approximately $7,825,350 by various insiders. Furthermore, at the hearing, the United States Trustee made it clear that his motion to appoint an examiner did not stem from any non-disclosure or fraud by Debtor;

9

rather, it was Debtor's disclosure of the transfers in its Statement of Financial Affairs that prompted the filing of the motion. With this background, Len-Verandahs's argument that Debtor mislead it is unpersuasive. Len-Verandahs consciously decided not to file a proof of claim for tactical reasons. Ultimately, the result of this decision may be different than Len-Verandahs initially thought, but the decision to file a claim was not a "mistake." "Merely because a claim was filed late does not establish that such late filing occurred because of inadvertence, mistake, carelessness or intervening circumstances beyond the party's control." In re Montaldo Corp., 209 B.R. at 48.

Len-Verandahs also argues Debtor is not prejudiced by its late filing of a claim because Debtor knew of Len-Verandahs's claim and a copy of the complaint was attached to the motion for relief. As a result, Len-Verandahs argues its motion for relief and briefs constitute an informal proof of claim because it apprised the court and Debtor of the nature and extent of the claim. For a pleading to be an informal proof of claim, the Eleventh Circuit has stated:

> Not every document filed in the bankruptcy court will constitute an informal proof of claim, however; the document must apprise the court of the existence, nature and amount of the claim (if ascertainable) and make clear the claimant's intention to hold the debtor liable for the claim. . . . Mere knowledge by the debtor of the creditor's claim will not suffice

10

>           to establish the existence of a valid proof of
>           claim.

Charter Co. v. Dioxin Claimants (In re Charter Co.), 876 F.2d 861, 864-65 (11th Cir. 1989)(internal citations omitted); In re Butterworth, 50 B.R. 320, 322-24 (Bankr. W.D. Mich. 1984)(to serve as an informal proof of claim it must show that "a demand is being made against the estate and that the creditor intends to pursue that claim."). Even though a copy of the complaint was attached to the motion for relief from stay, Len-Verandahs's motion did not make clear Len-Verandahs intended to hold Debtor personally liable; rather, the motion made it clear Len-Verandahs would proceed against Debtor only nominally. In its motion and brief, Len-Verandahs argued that there would be no great prejudice to the bankruptcy estate as "the policy proceeds are not protected by the automatic stay . . . [A]ccordingly, Len-Verandahs should be allowed to proceed nominally against [Debtor] in the pending Florida state court action for the purpose of 'establishing liability as a prerequisite to recover' from [National]." Motion for Relief, p. 3, Dckt. No. 121. Further evidence of its intent to proceed nominally and to look to the insurance proceeds is stated in its brief, "[D]ebtor may simply default, knowing that the judgment will be unenforceable except against the insurance company" and "Len-Verandahs cannot recover anything from the bankruptcy estate without coming back to

this Court and filing a proof of claim." Brief, p. 5-6, Dckt. No. 193. Further stating in its response brief, "[A]s Len-Verandahs has argued at length elsewhere, because the policy proceeds are not part of the bankruptcy estate, lifting the stay would have no detrimental impact on the estate or the [D]ebtor's other creditors." Brief, p. 3, Dckt. No. 216. Because no such clear demand to hold Debtor personally liable was made, neither the motion for relief nor the accompanying pleadings constitute an informal proof of claim.

Finally, even if Len-Verandahs made a mistake, such mistake is not "excusable" under the Pioneer factors. See In re Langley, 2011 WL 841170 *4 (Bankr. E.D. Mich. March 7, 2011)(utilizing the Pioneer standard in the context of a Rule 60 motion and determining that the Trustee's conscious decision to not object to a motion for relief because of his incorrect belief there was no equity in the property is not "excusable neglect."). First, Len-Verandahs argues that there is no prejudice to Debtor because there has not been a plan of reorganization filed. However, Debtor and Debtor's counsel have been formulating and negotiating a plan of reorganization. In many chapter 11 cases, this is the most important critical stage of the reorganization efforts. To be successful, Debtor has to propose a plan in compliance with the Bankruptcy Code that is acceptable to its creditors. While these

12

negotiations are frequently behind the scenes, they often are the most vital factor of whether a chapter 11 plan will be successful. "Courts have acknowledged that '[p]rejudice from a late-filed claim is greater when the creditor's delay extends into the period in which the plan of reorganization is being negotiated, drafted, filed, or confirmed.'" In re Asarco, LLC, 2008 WL 4533733 *2 (Bankr. S.D. Tex. Oct. 3, 2008) quoting In re Nat'l Steel Corp., 316 B.R. 510, 519 (Bankr. N.D. Ill. 2004).

Currently, Debtor is in the drafting and negotiating stages of the plan confirmation process and a late claim prejudices Debtor's efforts. At the hearing, Debtor announced it projects to pay its unsecured a very high dividend, and hopefully in full. The size of Len-Verandahs claim almost equals the total of all other unsecured claims listed in Debtor's summary of schedules. As Debtor's counsel stated at the hearing allowing a late contingent claim by Len-Verandahs would further prejudice Debtor because the plan being drafted establishes for a contingent claims reserve and funding the reserve affects distributions to creditors thereby hampering Debtor's projections and the likelihood its proposed plan will be confirmed.

Second, the length of the delay must be considered. The motion to allow the late claim was filed over two months after the

13

AO 72A
(Rev. 8/82)

claims bar date. Except as discussed elsewhere, under the facts of this case, I do not find Debtor has been prejudiced by the length of delay.

Third, the reason for the delay was well within Len-Verandahs's control. As previously discussed, the intentional and tactical decision not to file a claim does not amount to "neglect" under Pioneer.

> [C]onscious decisions not to file a claim may be made where a party at first believes that no dividend will be paid in the case or where there is a tactical reason for not filing a claim until after the bar date has passed. In such a situation, there simply is no neglect involved and relief based upon the concept of excusable neglect is not appropriate.

In re Montaldo Corp., 209 B.R. at 48; In re Banco Latino Int'l, 310 B.R. at 785 ("it is well established that 'where a party's actions are deliberate, the party's late filing cannot constitute 'excusable neglect.'"); In re Celotex Corp., 232 B.R. at 495 ("[A]ppellants' decisions not to pursue timely proofs of claim were deliberate and conscious and did not arise as a result of 'neglect,' there is no 'neglect' which can be the focus of an 'excusable neglect' analysis under Pioneer."); accord Agribank v. Green, 188 B.R. 982 (C.D. Ill. 1995); In re Bicoastal Corp., 176 B.R. 966 (Bankr. M.D. Fla. 1994). There was no carelessness or mistake involved but rather there was a deliberate effort to avoid the jurisdiction of the bankruptcy

14

court to keep the case in the Florida state court and preserve the right to a jury trial.

Lastly, the good faith of Len-Verandahs must be considered. Again, Len-Verandahs made a tactical decision to pursue the matter in the venue of its choice and it did not want to jeopardize its right to a jury trial. Now, having obtained the desired result in the motion for relief from stay action, Len-Verandahs has reconsidered that decision based upon the possible lack of available insurance coverage and Debtor's potential assets. Such conduct does not constitute excusable neglect. See In re Bicoastal Corp., 176 B.R. at 972 (questioning movant's good faith in seeking to allow late claim where movant had made the decision not to file a proof of claim because movant believed it was economically pointless to pursue the debtor). Len-Verandahs has not been mislead by Debtor's schedules as the schedules reflect Debtor is solvent and disclose the insider transactions.

For these reasons, it is ORDERED that Len-Verandahs's Motion to Allow Late Claim is DENIED and its claim is DISALLOWED.

*/s/ Susan D. Barrett*
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 16th Day of May, 2011.

15